658

(No. 78-CC-0694– )

NORBERT RAYFORD, Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Opinion filed December 1, 1982.*

STANLEY K. STEWART, for Claimant.

TYRONE C. FAHNER, Attorney General (PAUL M. SENG-
PIEHL, Assistant Attorney General, of counsel), for Re-
spondent.

ROE, C.J.

This matter comes before the Court on a complaint
filed by the Claimant for back salary allegedly due him
as a result of a wrongful discharge from employment.
The claim seeks wages lost from March 5, 1973, through
June 30, 1977.

At the time of his discharge, Claimant was a Techni-
cal Advisor V with the Department of Personnel. On
approximately May 20, 1977, the Civil Service Commis-
sion of the State of Illinois, ruled that Claimant's dis-

charge from his position was improper and illegal and ordered the Department of Personnel to reinstate Claimant in his position.

Because of ambiguities in the Civil Service Commission's order, in June 1977, Claimant with a co-complainant, one James F. Shimeall, filed an administrative review action in the circuit court of Sangamon County, Illinois. In October 1977, Claimant and the defendants in the administrative review action, namely, the Civil Service Commission and the Department of Personnel, settled the administrative review action. The written settlement agreement filed in the case provided in part as follows:

"3. Mr. Shimeall and Mr. Rayford are entitled to full back salary and benefits for the period from March 5, 1973, to the effective dates of Mr. Shimeall's transfer and Mr. Rayford's resignation, subject to mitigation for earnings received from other employment and to other rules and requirements of the Court of Claims of the State of Illinois."[1]

It is undisputed that the gross earnings which Claimant would have received for the period in question was $93,976.98. The only issue before this Court concerns the question of mitigation of damages by the Claimant—whether or to what extent the Claimant properly and reasonably mitigated his damages during his period of wrongful discharge.

When the Claimant was discharged, he moved to Louisiana where he obtained a teaching position as an assistant professor of law at Southern Louisiana University Law School. He continued to work in that capacity through the end of the school year in May 1975, when due to University accreditation problems, he resigned as an assistant professor and thereafter devoted his entire time to the private practice of law.

During the years 1973-1975, Claimant reported earnings from his position with the University of $35,058.29. Were this all, there should be no question. As we have

indicated, it is stipulated that the gross earnings Claimant would have received was $93,976.98, and as mitigation earnings through May of 1975, Claimant would have shown $35,058.29. Questions of mitigation in this Court, however, are rarely that easy.

It seems that in 1973, in addition to his position as assistant professor, Claimant also began his own private law practice. It is this private practice, with Claimant's annual earnings and expenses reported therefrom, that causes the difficulty here.

A quick look at his reported earnings and expenses as a private practitioner reveals the following somewhat dismal financial record and highlights the problem between Claimant and Respondent:

| | Earnings from Private Practice | Expenses of Private Practice |
|------|--------------------------------|------------------------------|
| 1973 | $ 1,515.00 | $ 6,739.36 |
| 1974 | 8,663.50 | 27,383.65 |
| 1975 | 6,656.60 | 27,390.99 |
| 1976 | 12,953.52 | 27,723.88 |
| 1977 | 16,283.71 | 27,773.83 |

Claimant argues that total expenses in any tax year must be offset against any income in that year and that, therefore, in the years 1974-1977[2], Claimant's income would result in zero earnings for mitigation purposes. Succinctly stated, Claimant's position is that (1) this Court should not go behind the tax returns as filed by Claimant and presumably accepted by the Internal Revenue Service, to determine what a proper expense may be; and (2) this Court has always considered both losses as well as profits in reaching a proper mitigation figure. In principle, we agree; however, Respondent presents three arguments that we must address.

Respondent first argues that Claimant has breached his duty to mitigate damages by intentionally operating a private law practice at an extravagant loss. We do not wish to burden the record with an itemization of the var-

ious expenses incurred by Claimant during the years in question. We believe it is sufficient to say that at least on first blush, many of his expenses (which consistently were more than double his income) seem excessive, if perhaps, not foolish.

We agree with Respondent that Claimant must demonstrate that he did all in his power to mitigate damages. This Court has said in *Otto v. State,* 24 Ill. Ct. Cl. 72, 75-76:

"We are not going to enter an award for salaries unless claimants have proven that they attempted to find other employment, and, if there is no showing to that effect, there will be no award made for that period of time. We will only consider their salary and earnings from other employment from the date that they started to seek employment and were gainfully employed, and we do not believe that one can sit idly by and draw a salary without attempting to seek employment in mitigation of damages."

And in *Stephanites v. State,* 24 Ill.Ct.Cl. 340, 342:

". . . it is well established that it is the duty of all suspended state employees to mitigate damages incurred through loss of salary due to suspension and discharge, and to do all in their power to seek, find, and accept other employment during the period following discharge.

Claimant must prove that he did all in his power to mitigate his damages by seeking employment. If he does not so prove, it is the function of this Court to determine the reasonable amount whereby an award should be mitigated."

And we agree that the State should not have to subsidize bad business judgment. However, we have neither the authority nor the wisdom to demand success of every Claimant who may attempt a private enterprise. Certainly in the instant case, we believe Claimant attempted, albeit unsuccessfully, to mitigate his damages, and we cannot hold that he entirely breached his duty to do so.

Respondent also argues that Claimant cannot use business losses from his Federal income tax return to reduce the mitigation earnings. We do not agree. This would mean that we must reject any and all business expenses as a means of determining a proper mitigation

amount; and that, we have consistently refused to do. We believe that all business expenses, properly accounted for as applied against business income, are properly considered in determining a mitigation amount. We will not make an inquiry into the propriety of each and every item of expense, nor will we prescribe accounting principles to be followed in this Court. A determination of expenses by tax accounting in accordance with the Federal income tax laws is an acceptable method.

Finally, the Respondent argues that the Claimant's duty to mitigate damages incorporates a duty to minimize expenditures. We agree. While this Court has not specifically ruled on the issue of what constitutes a reasonable business expense to be reduced from gross mitigated earnings where the Claimant has his own business we said in *Stephanites, supra,* at 342:

"If he does not so prove (he has mitigated), it is the function of this court to determine the reasonable amount whereby an award should be mitigated."

In an attempt to help this Court arrive at a reasonable figure to deduct from Claimant's gross mitigated earnings, Respondent compares in great detail the similar situation of James Shimeall, *supra,* Claimant's co-complainant. Although the comparison offers much insight, we believe that there are enough distinguishing factors as to make unfair any precise analogy on which we ought to base our decision.

This case does appear before us on first impression on the narrowly analyzed question of what constitutes reasonable business expenses for determining proper mitigation earnings where a Claimant has his own business. We believe, without more, that we are empowered to arrive at a reasonable figure. As we have stated, we believe that all business expenses properly accounted for may be considered in determining a mitigation amount. A necessary corollary to this is that the duty to mitigate

includes a duty to minimize those same business expenses.

Accordingly, we find that business expenses in excess of 50% of earnings generated by those expenses are not reasonable and will therefore be disallowed.

The undisputed gross earnings which Claimant was entitled to was $93,976.98. This must be mitigated by $35,058.29 (the amount Claimant earned as a law professor) as well as $23,036.16 which reflects his law practice earnings less 50% which leave a balance of $35,882.53.

[1]See *Shimeall v. State* (1978), 32 Ill.Ct.Cl. 760, for a more complete review of the settlement agreement.

[2]In 1973, Claimant earned $9,914.29 from the University and $1,515.00 from his private practice. He claims his expenses from private practice of $6,739.36 should be offset against total annual income to provide a total net mitigation earning of $4,690.00.